Good morning, Your Honors. Samuel Barnum, appearing for defendant and appellant. In my remarks this morning, I'd like to focus on two general areas with specific points to be made with respect to each of those areas. The first one is, it should be said that our cases get weighted by the staff, and I don't even read the briefs. They just sort of count the issues. And somehow it seems if they think there's money involved, they get a higher weight than if they think there are constitutional principles involved. So they're not always accurate weights. This case really doesn't need 20 minutes of argument. It's quite a simple case. The answer may not be easy to arrive at, but the issues are fairly clear. So if you would don't base your argument on the need to occupy 20 minutes, but try to make it what's really necessary. I appreciate that, Your Honor, and I would agree with your perspective on that. I would like to reserve 5 minutes for rebuttal. In terms of, again, the two general issues, one is the insurance code, section 11584. The other general point of address is the conspicuousness requirement, and so I'm going to confine my remarks to those two areas. With respect to the first issue of the statute, the district court felt constrained by the two cases cited by the insurance company in this matter with respect to the interpretation of the statute. However, I think she took too narrow a view of her authority in terms of interpreting California law, and I say that because where there's no California Supreme Court decision on point, the federal court has leeway to exercise its judgment as to how the Supreme Court would decide the matter. And that proposition I draw from the Ninth Circuit's decision in Dmitrovich, which is cited in our brief, our opening brief on page 21. The real question here, though, is that the deceased was not licensed to fly. He had no instrument rating. That's correct. The Ukiah Airport at the time of the fatality was under instrument rating requirement, right? That's correct. So the only real question is whether this is a use or operational, and Threlkeld and Bright suggest that it was a use situation. Do you read those cases differently? Well, I my problems with, and Bright is really the definitive case. Threlkeld simply relied on it and didn't do any independent analysis. Right. Same facts, though, basically. Similar facts. Similar facts.  And then they talk about the statute referring to the manner of operation, and then it also talks about the statute prescribing exclusions related to operational violations. But the reality is, I mean, I think there's some Georgia cases and others that were cited. If somebody is only required to fly VFR and there's a requirement for instrument ratings, that's use. That's use by almost any standard that I'm aware of. Insurance treatises treated that way. These cases treated that way. Do you have any authority at all that suggests that whether or not a person is qualified, that is, has the appropriate rating to fly visually or in instruments, is anything other than use for purposes of California insurance law? I know you feel differently, but is there any case law? Well, no, there isn't. Not that I'm aware of. Is there any case law that talks about when a pilot doesn't have a certification, whether that comes under the use of the aircraft or the certification of the pilot provision? Again, Your Honor, not that I'm aware of. There's a district court. Only counts you lose on two counts. You lose on the first one, and then he wasn't certified, so you lose on that one, too. Well, that depends on how that exception for certification is interpreted. Well, how was he wasn't certified. How do you interpret it? Well, I think there's a distinction that is made in the FAARs between certifications. Made by what? In the Federal Aviation Rule regulations between a certificate and a rating. Here, Mr. DeAnda clearly had a certificate that he disclosed to the insurance company that the insurance company issued a policy on the basis of. And they knew that he did not have an instrument rating. Certificate in a stated category. Correct. Isn't the instrument flying a category? I don't believe so, Your Honor. I think the category in this case was single-engine land. That was the category for which he had his certificate. Don't you get certificates for IFR or whatever it is, instrument? Well, I think if you do, there is an indication on your certificate that you have that rating. But the certificate can be issued without that rating, as it was in this case. He did not have an instrument rating. And you say a category is the type of claim? Again, it's not clear in terms of the statute, and there's no interpretation of that that I'm aware of. But I believe that in this instance, the category was single-engine land, which is what he issued the certificate for. Well, what do they give you when you're certified for instrument flying? I believe there's a rating indication on your certificate that shows that you are instrument rated. I mean, the reality, isn't it, counsel, to take something extreme? If somebody has a VFR certification to fly a Cessna 172 and they jump into a 707 and take off, the insurance company is going to have a problem with that, because they want to do their underwriting based upon the certification of the pilot, the way the pilot uses something in connection with that certification. Instrument ratings are required in much of the United States all the time. And insurance policies are going to rate the cost of the policy, for one thing, higher if they're instrument rated because there's a greater risk involved. They have a business right to make an underwriting determination. And ultimately, isn't that what we get down to here? The California law does not, by my reading, appear to prohibit that kind of a distinction. This pilot, God rest his soul, did not have an instrument rating. It probably cost him his life. But he also was not insured to fly in that weather. And the insurance company isn't required to make it up to his widows and other people because he didn't have that rating. Isn't that really what we're dealing with here? Well, to get back to the introductory comment you made there, if the situation were such that someone who had a certificate to fly a private passenger plane flew a passenger jet, clearly that would be a violation of the certificate. And he was not. And of the use of the insurance policy, right, and of the use provisions. Well, it would be a violation of the pilot clause because in that scenario, the pilot clause would identify the certificate for which he was insured under that policy. But that's different from the rating category because in this case, if you look at the pilot clause in the policy, it just talks about the certificate that he had. It doesn't say that he had to be rated for the flight. There was nothing in the declaration page that pointed that out. I'm kind of getting ahead to the other part of the argument. But in terms of the statute, statute doesn't – there's no statutory definition of use of an aircraft. And I think under general principles of statutory construction, you look at what the plain and ordinary meaning of use would be. And I think if you did that in reverence to standard dictionaries as one means of determining that meaning, you'll find that a common definition is use refers to the object and or purpose for which something is used. And I think that is – But, counsel, 11584, and I'm just going to read this to you, it says, this section does not prohibit the use of specific exclusions or conditions in any such policy which relates to and then sub 4, establishing limitations on the use of the aircraft. Now, in this particular case, he used the aircraft in conditions that required for him to have an instrument rating. He did not have an instrument rating. It had to do with the use of the aircraft. Taking the common sense plain meaning definition you're talking about, doesn't that flow from that language? Well, the difficulty that arises here is that if – and the district court struggled with this, as you see in her opinion and in the transcript – is that if you take that definition of use, it in essence eviscerates the operational violation that is supposed to be precluded and prohibited by the main provision of the statute. So that's the difficulty that I have with that interpretation of use in the context of the statute. The California cases that talk about use of the aircraft have to do with something that's unrelated to the pilot. They have to do with, for instance, for using the aircraft to import marijuana or something like that. Or the aircraft is used without an airworthiness certificate. It's the – the aircraft is not supposed to be used for a particular purpose. There is a provision that covers the pilot. And I thought the problem was that you came under that provision and that there was a question of whether that provision was at issue. But it seems to me you're covered under one or the other. Let me ask you one other question. Is there a separate life insurance policy that's not involved in this case? I believe there is, Your Honor. This one only has to do with the cost of the aircraft. That's correct, Your Honor. And also a liability claim for property damage to a truck that was damaged in the accident. I assume it's probably a life insurance policy somewhere. Everybody has life insurance. Yes, Your Honor. It's my understanding that there was. I was not involved in that issue. But there – I don't – maybe it doesn't matter. But there are four subparts or five subparts – four subparts, really, to this section of the statute. And some seem to deal with the aircraft and some with the pilot. Well, that's correct, Your Honor. And that's the other. In terms of the context of the statute, there is a distinction between, as you're pointing out, between permissible exclusions related to the aircraft and permissible exclusions related to the pilot himself. So I think – And which one does this come under in your view? Well, the insurance company was relying on exception four for use of the aircraft. That was what was argued in their motion below. They did raise this issue in their opening brief. You know, they didn't raise it below. They're raising it now. I think they've waived it. But if it's considered to be simply a question of law, then for the reasons I expressed earlier, I don't think that exception. Are you not arguing that their failure to raise it below precludes them from raising it here, or are you? I can't tell. I am. You are arguing it? Yes. I just thought I heard you saying, well, they didn't raise it, but if it's a question of law, it's okay. Well, it's my position, Your Honor, that they did not raise it below. It was not presented to the district court below. They waived that issue. And you didn't raise it in your appellate brief. Well, I made the argument that it had not been raised before. I don't quite follow what kind of an argument it is. The district court decided in their favor. Do they have to add another argument in order to win the district court? I mean, it seems sort of foolish to say they had to pile up the arguments or they waived it. Where do you get this idea that that was an effective waiver? Well, Your Honor, in my experience, ordinarily you will advance, certainly in coverage cases, you will certainly advance all the arguments that will preclude coverage if you are arguing on behalf of the insurance company. But it didn't hurt you, did it, that they didn't raise it because you were losing on the other ground? I mean, the only reason for saying something is waived is it affects the other side. And how does this injure you to have them not raise it when the court was going against you anyway? Well, they've raised it in this proceeding. I know, but why does it hurt you? The first time it didn't hurt you at all, right? Well, I understand what you're saying, Your Honor, in the sense that the ruling was against us. Yeah. So then they do raise it on the appeal, as you say, the normal practice. And you say, oh, no, they've waived it, but it didn't hurt you the first time. Why should we take account of it now and take care of your objection now? Well, that's for this panel to decide. Well, do you have an argument as to why, if an issue is not raised in the district court, it can't be resolved in the court of appeals without giving the district judge the first chance to decide it? Your Honor, I will concede that there was no prejudice to me or my client by them not raising that issue in the district court proceeding below. I would like to talk about conspicuousness before my time is up. Even if the statutory preclusion does not apply here, the other issue raised is whether the flight-rated exclusion in the policy was conspicuous as required by California law. The Court, of course, held that it was. I believe she missed the central premise of the Haynes decision, the California Supreme Court's decision in Haynes, and that is that the pilot clause in the declarations page is the place where you would look to find any limitations or exclusions with respect to the pilot qualifications. In this case, everything was in there except reference to being qualified and flight-rated for instrument conditions. The ---- Are you saying the whole exclusion provision is invalid because it's not conspicuous? Your Honor, we have just challenged the part of the exclusion B which related to the flight-rated requirement. And why do you say that's not conspicuous? Because there should have been and could have been a reference in the pilot clause on the declarations page of the policy that would have alerted Mr. DeAnda to the fact that the company would be relying on an exclusion for his lack of an instrument rating when, in fact, the pilot clause did not require him to have an instrument rating. So you're objecting to where it was placed in the policy, not that it was conspicuous in the place that it was placed? Well, placement is one component of conspicuousness. In the Haynes decision, they were talking about the placement of the ---- in that case, it was an autopolicy concerning policy limits for permissive use and the lower policy limits for the permissive use. Well, this wasn't fine-tuned. I mean, the reality is most people can't understand insurance policies anyway. But if you sat down and read the insurance policy, you wouldn't be handicapped by an inability to find this particular exclusion, would you? Most people, in common experience, I think, don't look much farther than the declarations page of the policy. They don't look even at that. And they might even do that. They just, their insurance agent hands it to them and they say, thank you very much. They don't look at it. So the reality is here under the case law, as I understand it, is that if you have something that's such a fine print, you really can't figure it out. It's hard to understand. And it's just this little teeny, teeny stuff. That may be one thing. But this whole policy is written in about the same PICA type. It's not particularly difficult to understand this section. I'm having difficulty understanding why you think this is not conspicuous. Well, if you look at what was done in the policy with respect to some other provisions, and two examples of that are on the declarations page, it talks about the use of the aircraft. In this case, it was for pleasure and business. But then there was a reference to a page in the policy which contained a definition of what use means. So on the declarations page, there was an express reference which referred the policyholder, the reader, to a specific page. Another example. Are you suggesting if it didn't contain that, that the policy exclusion would have been invalid? Well, it's not so much what I'm expressing as what I think the Supreme Court in Haynes required that. You think they would, based on Haynes, it would find that the whole exclusion was invalid if it didn't contain a cross-reference? Well, I don't know about the whole exclusion, because the other parts of the exclusion basically track the provisions that were in the pilot clause. They basically reiterated the... My point, counsel, is simply that you can't have it both ways. You know, you take the whole policy, you can't just pick out little pieces of it and say, well, you know, this one, if they'd have done it differently, we'd have understood it. But all the rest of it looks exactly the same. I just, I don't see the distinction. The fact that they had a cross-reference to a definition, that was nice of them to do that. But the fact is there's no – Haynes doesn't require them to do that, does it? Well, I think it does. I think it's – Why didn't they? It was one of the ways it could be made conspicuous. One way would have been to put the policy, excuse me, would have been to put the policy, lower policy limits in the declaration. So you're suggesting Haynes would require that any time a definition is involved or to understand the declarations page, you have to have a cross-reference to some other part of the policy that defines it, otherwise it's not valid? Well, I don't think – I don't think Haynes goes that far. Neither do I. But I think in terms of an essential feature like the policy limits or the pilot qualifications, I think Haynes would require that. I see that my time is up here, so I've reserved a few minutes. Thirty-six seconds. Thirty-six seconds over. You're minus thirty-six. Thank you. Good morning. I'm John Morris for the Planet of North America Specialty and the Epilogue in this case. It appears the facts in this case are totally undisputed. This pilot was a private pilot. He was authorized to fly this airplane as an insured. However, he was not authorized to fly under instrument flight rules or in flight weather conditions which required an instrument rating. There's no dispute, I believe, that he took off under weather conditions which were way below the visual flight rule minimums. And he knew what he was doing. He knew he didn't have an instrument clearance. And he lost control of the airplane. And that's the facts. And what we have here is a situation where the pilot's estate is asking the insurance company to cover a claim in which they did not agree to claim and which they expressly declined to claim under the words of the policy. There are really only two issues that are raised in an attempt to avoid the plain words of the policy and the plain facts which are not in dispute, one of which is the applicability of Insurance Code 11584, and the other is the conspicuousness of the exclusion. I'd be pleased to address them in that order. Well, it's a question of whether the first round is more specific, more general than they raised or not. I thought in their brief they also raised the argument that you were saying it was excluded under 115844, and that that, they say, is not the ‑‑ that does not authorize an exclusion for pilots, that there's a different provision that authorizes the exclusion for the pilot's certification. Okay. The short answer is that we are relying on 11584 exception 4 relating to the use of the airplane. It is our position that ‑‑ So do you think they would lose if that's not the applicable provision? I think they would lose if ‑‑ No, no. Would you lose if that were not the right provision, the use of the aircraft? The short answer is no. Again, I believe there is no authority which would allow them to escape the applicability of subparagraph 4. The reason I raised paragraph 2 is ‑‑ Is it that subparagraph 4 covers a pilot's failure to be certified at the proper rating? Yes. Not under California law. The Georgia case, again, I've not found any California case where an insured came in and said, well, I was operating an IFR. But you were talking about a California statute that has different sections in it. I don't know what the Georgia statute is. The Georgia statute is almost word for word the same as the California statute, and they had the same provision that you can't have a policy exclusion based on violation of the Federal Aviation Regulations, but they have the exception for a use of the aircraft. And the Georgia case involved a student pilot who took off carrying a passenger, which is not authorized under the Federal Aviation Regulations. And the Georgia court held under that situation that was an impermissible use of the aircraft. The Georgia court also indicated that they would have upheld the exclusion under the second exception to the Georgia statute, which is virtually the same as the California statute. That's the only reason I raised it in my brief. Well, I think you heard the Court in colloquy with Mr. Bonham suggest that section 2 was applicable, and are you saying it is not? No. I'm saying that even if subsection 4 were not applicable, subsection 2 would be applicable based on the Georgia case. I'm saying it's not. And what do you make of the fact that you didn't tell the district court that section 2 was applicable? Well, quite frankly, I felt that subsection 4 was so clear in the California cases. I didn't ask you why. I said you may have thought it clear. But what is the consequence of your not having relied on subsection 2 in the district court? My point would be that if the district court's decision was correct on any ground, then, as you know, we're going to have to consider it. And whether you raised it or not? I mean, we just could create any ground we want that the district court didn't consider? Well, I believe there's authority that says if the district court's decision is correct on any ground, then it should be upheld. Do you know of a case that says if it's correct on any ground that wasn't raised as opposed to any ground that was raised? I don't have a specific case of citation in mind, Your Honor, no. And as I say, I'm perfectly happy to stand on exception 4 because the two California cases. You say you're perfectly happy. You mean you'd be perfectly happy if we ruled section 4 doesn't apply? No, no. You'd be happy to lose? No, no. I wouldn't be happy on that. I don't believe that's the state of the law. I think — Okay. Well, I mean, but sometimes courts make rulings that lawyers don't think is correct. That happens. When you say you're perfectly happy to stand on section 4, I assume that means you're perfectly happy to have us base our decision on whether section 4 applies or not. That's basically what I'm saying, yes. But the point is that the appellant has not come forward with any case from any jurisdiction which suggests that operating an airplane under instrument conditions without an instrument rating would be considered an impermissible use. But people haven't come forth. You haven't come forth with any case in California that says that a pilot's failure to get a certification of any type comes under subsection 4. It's not a question of whether or not he obtained the certification. For example, we know from the record that Mr. DeAnda obtained his original policy while he was a student pilot. The fact that he was not yet a private pilot did not prevent him from being named insured or being authorized to operate the airplane within the limits of his pilot certificate. However, again, under the Georgia case, had he been carrying a passenger in visual weather, he would be using the airplane for an impermissible use and coverage would be suspended during that impermissible use. This is an objective standard where the pilot can know before he takes off whether or not the flight is going to be covered. Well, let me ask you about this for the question of the certification. Yes. He gets a certification. Does that cover instrument flying as well as visual flying? Okay. The the exclusion says rated for the flight involved. Now, if I may, I can explain that when a pilot obtains a goes to his training, first gets a student pilot certificate. Then when he passes his flight check, he gets a private pilot certificate. And there are, in this case, airplanes, single engine land. Then it requires additional training, additional experience, another flight check, another oral and other written test to get an instrument rating. And so the pilot would get an instrument rating on his pilot certificate. So when he gets his first pilot certificate, it'll say ratings, airplane, single engine land. When he gets his instrument rating, it'll add the word instrument to it. So then his certification will then have instrument. That's correct. He would then be authorized to operate under instrument flight rules, assuming he meets the other requirements such as minimum equipment aboard the airplane, compliance with air traffic control. But he is required to obtain additional training not only to be able to accept and understand and comply with air traffic control instructions, but also to operate the airplane solely by reference to instruments and avoid spatial disorientation in the clouds. Could you address the other side of the equation here? California Insurance Code, Section 11584, prohibits denial of coverage based on, in quotes, operational violations, but permits them based on use violations. Sure. What does the term operational violations mean? Okay. Let's suppose, for example, that the exclusion said no coverage if the pilot violates any regulation pertaining to instrument flight. So, for example, that would, if you carry that to its logical conclusion, that would mean that if an instrument rated pilot were flying and he deviated from his assigned altitude or his assigned route of flight, then he would be violating rules pertaining to instrument flight rules. Then that would not be a valid exclusion. In other words, operational, I gather that the legislature must have been thinking that if you could invalidate a policy based on operational rules, that in effect you could take away with one hand what you're giving with the other and end up with essentially no coverage at all. Well, absolutely. For example, there's a regulation, 91.13, that prohibits operation in a careless or reckless manner. And so you could almost always find that the pilot were careless and reckless and that's why he crashed. So, in other words, what they're saying is once you get in the air, if you do something careless or reckless, you buzz a house, you fly at high speed and don't watch where you're going, they're not going to allow an exclusion which would invalidate a policy based on that operational violation, which takes place after you're flying in an otherwise covered flight. On the other hand, there are objective standards that you can look at, which would tell you whether or not the entire flight coverage is going to be suspended. For example, if you take off as a student pilot carrying a passenger, the entire flight would be suspended and coverage would be suspended until you land. Are there comparable, if you know, are there comparable provisions for automobile insurance? Not that I'm aware of. Aviation insurance tends to have a lot more exclusions. For example, automobiles, typically if you're a licensed driver, you're going to be covered driving anybody's car. It's not that way in airplanes. The airplane insurers want to know who the pilots are, what kind of experience they have. For example, what I would call the open pilot warranty in this case says we will not cover another pilot unless he meets the requirements, 1,000 hours of total flight time, certain amount of time in the airplane. So, for example, an airline pilot with 10,000 hours who has only flown this airplane, this type of airplane five hours, would not be covered unless they get a specific endorsement. It seems to me the provisions are distinguishing, just as you distinguish, between the pilot's qualifications and the aircraft's qualifications. The cases you have on the aircraft, it wouldn't matter who the pilot was. You couldn't use an aircraft for a particular purpose, and you can't use the aircraft if it's not certified. When you're dealing with what the pilot's qualifications are, you have separate provisions in the insurance code dealing with the pilot. And that's the distinction that I see in the various sections, but you don't. Well, there are two different exceptions here. One pertaining to pilot certification, for example. Yeah, that's Section 2. That's Section 2. And one relating to the aircraft, which is Section 4. Right. In other words, they could, in fact, insist that only Mr. Deanne to fly this airplane, and that would be a valid exclusion under Exception 2. But Exception 4 is the one I think really applies here. And if we look at the Georgia case with a student pilot, that's almost directly on point. And, again, I've not seen any case where anybody's raised the issue that having taken off for an instrument flight without an instrument rating, they should be entitled to coverage. You haven't seen any cases on the other side. But you haven't seen any cases on your side in California either. You've got one Georgia case. That's apparently all there is. Right. Okay. Aren't insurance statutes supposed to be strictly construed in favor of the insured? Well, once again, the California courts have ruled rather clearly that when you have a permissible where you have the entire flight is prohibited, then that's a valid exclusion. And the Middlesex case specifically said that the exclusion is intended to be. But you're not answering my question. Yeah. Aren't insurance statutes supposed to be strictly construed in favor of the insured? Within reasonable bounds, yes. But that doesn't mean that you go overboard and, you know, construe it in an unreasonable manner. Who's an activist judge? It's somebody whose opinion you don't like. Well, the same reason they say that, you know, exclusions are strictly construed against the insured. But they also. Against the insurance company. Against the insurance company. However, you don't. That only applies if there are two reasonable interpretations. In other words, you don't strain to find an unreasonable interpretation to construe it strictly against the insured. But as Judge Reinhart pointed out, the truth is there are really no California cases on point either way. That's true. This statute is essentially unconstrued for the facts of this particular case. You've got the Georgia case, which doesn't usually carry a lot of weight in the Ninth Circuit. Well, but. And so realistically, you are, in effect, asking us to construe the California statute in the way you have proposed. Realistically, I'm asking the Court to follow California law as it was laid down in Middlesex and Falcred. And the Demidovich case, which was cited by the appellant, basically requires that the Court accept the lower court's decisions as data and. Middlesex has to do with the aircraft, which is being used for an improper purpose. That clearly is the wrong use of the aircraft. It doesn't matter who the pilot is. Well, and similarly, operating an airplane in instrument flight rules without an instrument rating is an improper purpose. It's an improper use. That's, I mean, that's a plausible reading. But I tend to think that what Judge Ryan is saying makes sense, that four deals with the use, the purpose, et cetera. Two deals with the qualifications of the pilot. You have waived two. So now we're with four. And just speaking for myself, and I don't know whether my colleagues would agree, you're not in a very good position, but neither is the other side. We don't like to make California law. It's the sort of thing that you could come to an amicable agreement on. But don't think Georgia cuts any ice at all. You know, that's kind of unbelievable that you think Georgia would tell us what a California court would do. A California court leans over backwards to help the insured. I think Georgia would go just the other way. Well, but if you look at the National Union v. Carter case, the Supreme Court made it very clear that the court will uphold exclusions. Of course it will, if they're clear. This is a very unclear one. Well, the point is that we have two cases that have rejected attempts to void an exclusion based on 11584. They have specifically upheld the exclusion based on a use, and they've made a distinction between the manner of operation once the airplane's in the air and the use for which it's going to be used before takeoff. And that's what we have here. Counsel, wouldn't your opposing counsel indicate that he concedes that he's not prejudiced, the fact he didn't bring up sub 2 below. But the reality is that customs and practices of the insurance companies in California are rather important in construing this statute. Wouldn't the better thing to do be to send this back to the trial court so you could try sub 2 and sub 4, put on your evidence, find out what the insurance companies do? Because the reality is we're not going to rely on a Georgia case. We're just not going to do that. And we want to do the right thing. We want to construe the statute as it is supposed to be construed. But neither of you have really given us very much to go on. Well, the only thing on sub 2 is the Georgia case. So if you're not going to ‑‑ if the Court's not going to consider the Georgia case for sub 4. I understand. But at least the trial court would have the ability to hear, whether it's a judge or a jury, hear what you may bring in in terms of the practices and policies of California insurance companies, how they write their policies, what the underwriting practices are. He can indicate whatever he wants to, and then the judge will have a record that you can look at. Again, there's no law that's going to affect it on sub part 2. The intent of the insurance policy is simply not the issue. The question is it's a question of law for the Court to decide. The Court did decide it. It was decided based upon Felcred and Middlesex that the intent of 11584 is to preclude exclusions based on operational violations, as opposed to the use of the aircraft, where you can determine at the beginning of the flight whether it is or is not excluded. But that's really the negative pregnant of what those cases say. You're getting to the use provision by saying these cases give us the answer, but they really don't deal with these facts. As Judge Reiner pointed out, those have to do with, you know, like one of them dealt with narcotics and so on in connection to the operation of the aircraft. So those cases really don't give us the answer, do they? Well, again, if you take that to the logical exclusion, there's another exclusion that says you can't fly with more than four passengers. Does that mean that an insurance company would be required to cover a flight where eight passengers are in the airplane? Obviously not. That's an impermissible flight. In other words, you can tell by an objective standard before you take off that this exclusion will preclude coverage. You mean if the insurance said more than four, you would be in doubt about eight? Is that what you said? I'm saying if it's more than four, then the policy was not covered. That's exactly right, under Exclusion E. The policy said four, and then eight wouldn't be covered? Eight would not be covered. That's exactly right. Well, how do you figure that? Because under Exclusion E of the policy, it specifically says that. It says, and if you like, I'll quote it, that it does not provide coverage where the total number of passengers carried in the aircraft at the time of the accident exceeds the declared maximum stated in the declarations. That would, again, be an impermissible use of the aircraft. Well, I think we've exhausted this subject. We've taken over 20 minutes on each side for what should have been a 10-minute case. Thank you, counsel. Thank you. Thank you both very much. The case just argued will be submitted.
judges: Reinhardt, Noonan, M. Smith